## SHANKENBERY *v.* METROPOLITAN ST. RY. Co.

*(Circuit Court, W. D. Missouri, W. D.* March 17, 1891.)

1. STREET-RAILWAY COMPANIES—ACCIDENT AT RAILROAD CROSSING—NEGLIGENCE.
  Where a passenger on a street-railway car is brought into apparent imminent danger from a collision at a railroad crossing by the negligence of the motor-man in attempting to cross when he could see that there was a probability of the engine reaching there first, she can recover for injuries received in attempting to flee from it, though she would have been uninjured if she had kept her seat; but, if it would not have been brought into such danger except for the sudden, unexpected, and unanticipated obstruction of the car by a wagon, then there would be no liability on the part of the company.

2. SAME.
  The right of precedence in crossing between two railroad trains considered.


At Law.
*Hollis & Latshaw*, for plaintiff.
*Pratt, Ferry & Hagerman*, for defendant.


PHILIPS, J., (*orally charging jury.*) This action is predicated of the negligent conduct of the defendant in its failure to comply with and perform its contract with the plaintiff in carrying her as a passenger on its cars from some point over in Kansas into Kansas City, Mo. The law exacts of a carrier of passengers, in consideration of the hire it receives for the service, that it shall carry them safely, and as expeditiously as possible, from the point of their admission to their destination. By this, however, is not meant that a carrier of passengers is an absolute insurer of their safety. Its undertaking under its contract is to exercise the highest degree of diligence and care in seeing that no injury comes to them by failure on its part to perform its contract, which is for the safe carriage and transportation of the passenger. The law as applied to these personal injuries on railway cars is that, when an injury to a passenger occurs, the plaintiff has made out a *prima facie* case by showing the accident and consequent injury, then it devolves upon the defendant, the carrier, to show by evidence that it has exercised due care and caution in order to prevent the accident. If it has done that, it has exonerated itself. The law, gentlemen of the jury, is a reasonable thing. It proceeds on lines of common sense, and possesses sufficient flexibility to adapt itself to the varying circumstances of each particular case as it arises. Its rules are not senselessly arbitrary. In this case there was no disaster to the carriage or car in which plaintiff was being transported. There was no mismanagement on the car by which any derailment or any collision with any obstacle was occasioned, by reason of which this injury occured; but the injury in this case resulted from fright of the plaintiff, which caused her to flee from what she supposed to be an impending danger, and in getting from the car while it was yet on the track the injury occurred. Now in order, under that state of facts, to fix a responsibility upon the railroad company, it devolves upon the plaintiff to show by evidence to your satisfaction that this danger to which the plaintiff in this case was seemingly exposed, which caused her to

leave her seat and get into the tumult whereby the injury occurred, was brought about through some neglect of duty on the part of the defendant railroad company. If it was free from neglect in bringing the plaintiff into that position of apparent danger, there is no liability on the part of this defendant. Therefore, the evidence must go further in this case than that there was an accident and an injury, and show that the defendant was guilty of some culpable neglect of duty. The evidence shows that the point where this injury occurred was the intersection of two different railroad lines; one was occupied by the motor railroad, the defendant company, and the other by the Ft. Scott & Gulf Railroad Company, operating steam-engines and running cars over this intersection. The law of right of way applies to intersecting railroad companies, just as it does to vehicles passing through the country. Both of these railroad companies have rights there, and each, under the law of the land, must respect the rights of the other. The law exacts of each of these railroad companies a degree of vigilance, watchfulness, and care on its part proportioned to the danger incident to the operation of their respective trains of cars. At the point of intersection one party or the other, under the circumstances of the case, must have the right of way, so far as they themselves are concerned, and so far even as the public is concerned; and, in the absence of any evidence as to any special contract between these two railroads as to the right of way there, the law of the land would be that the railroad car which approached the crossing first had the right of way; and it was the duty of the other road, whose car or engine had not reached the point of crossing, to hold itself in check, and to give the right of way to the one first approaching. This is a law almost of necessity, and this case must be considered with regard to the surrounding circumstances of the place and time. In a city like this, where are being operated these street-railway cars, and where they are operating steam-engines, each one having its tracks and passages, it must be kept in mind by the jury that there is more or less hazard and peril at points of intersection; that trains cannot be stopped and stayed without cause, because they must make progress,—they must make their way; and that a street-car approaching a railroad crossing, in consequence of the danger to which its passengers are exposed, should exercise great vigilance, proportionate to the dangers to which passengers may be exposed. It must yet effect a crossing, and the law will assume that when it approaches such crossing, and finds it clear, no other train coming there having precedence by reason of having reached there first, it can proceed on its way, on the assumption that the other train will perform its duty both to the party making the crossing and the public, giving the one first approaching the right of way. So that if you find from the evidence that when the defendant's motor-car reached this point of intersection the Ft. Scott engine was from 60 to 100 yards distant, then the right of way was secured by law to the motor company, and it had the right to proceed, upon the assumption that the other road would observe its duty, not only to the car, but to the public, and would stay its engine, and not make a collision.

If, on the other hand, gentlemen of the jury, you find from the evidence that when the defendant train approached this crossing it received a signal notice from the flagman of the Ft. Scott road, who seems to have stayed at this junction,—that if it received a signal of danger or warning from him to stop, and the motor-man saw, or should have seen by the exercise of due vigilance, that warning, and failed or neglected to pay attention to it, and proceeded, nevertheless, upon the crossing, then he took upon himself, for his company, the responsibility of a collision that might occur there.   But if, as a matter of fact, at that time the engine was 60 to 100 yards distant, and he did not see the flagman, as the motor-man testifies he did not, and that the flagman was not in his accustomed place giving the signal, and, as a matter of fact, he did not see him, and that at that time the engine was where the witnesses, principally on the part of plaintiff, place it, then he had the right to proceed upon the assumption that the way was clear.   If, however, the motor-man, when he started upon the right of way, saw the engine approaching, and saw it was under headway, and that likely the chances were not only evenly balanced, but that there was a probability—a reasonable anticipation—that the engine might reach there first, it was then his duty to stop, and give the engine the right of way, in order to protect his passengers.   If the engine was approaching this street-car as it was crossing, as is claimed on the part of the plaintiff, and had reached so near to it that the plaintiff became alarmed, she would not be precluded from recovering, if the antecedent negligence transpired or existed upon the part of the motor-man, simply from the fact that if she had kept her seat she would not have been injured; because, as I have stated, the law is always reasonable, and the liability attaches to the party who brings another, through his negligence, into a position of peril.   If parties thus exposed to imminent danger—such as would strike the mind of a reasonable person as imminent—do not exercise the best judgment and prudence under the circumstances, yet the law does not hold them liable for it, because the law lays the burden of responsibility upon the carrier who negligently brings the passenger into the position of apparent peril.   Then, again, gentlemen, if you find from the evidence that defendant's car had effected the crossing before the passengers started from the car, and before the injury occurred, and that it would have cleared the track, and gone on out of danger, but for some sudden, unexpected, and unanticipated obstruction in front of the car, and that injury occurred to this plaintiff by reason of that obstruction, then there would be no liability on the part of this defendant; in other words, to make it plainer, if the car would have effected the crossing, and would have gone clear of any collision with the engine, and the parties would not have passed from the car, and plaintiff would not have been injured, but for the motor-car coming into collision with, or a threatened collision with, what is termed in evidence a "barrel wagon" suddenly appearing in front, which caused the car to stop,—if but for that the car would have gone clear, and this plaintiff would not have been injured,—there is no case against the defendant.   Now, gentlemen

of the jury, whether or not a barrel wagon thus presented itself, which caused this sudden stopping of the car, is a question of fact for you to determine. Of that matter you are the exclusive judges, because you are the judges of the credibility of the witnesses and the weight of evidence. There are two witnesses in this case who testify before this court and jury to that fact. The motor-man testifies directly to it, and the witness Lucas also testifies to it. Something has been said here in argument about the latter witness not being here. That evidence is in the form of a deposition of the man Lucas, and should have the same weight as if the party had sworn to the fact from the witness stand.

The whole case simply resolves itself into a question of fact as to whether or not it was the fault and neglect of the motor-man in first bringing his car into the position where he did, and, in the next place, whether his way was obstructed after he had effected his crossing by reason of the barrel wagon. The other witnesses in the case (plaintiff's witnesses) did not see any barrel wagon; at least, they do not state that they saw it. The attention of all the other parties was directed to the engine up the track, so that if, as a matter of fact, the barrel wagon was there, and these other parties saw it, it is very easy to understand why the other witnesses did not see it, because their attention was diverted and directed to the engine coming down the track, being in anticipation of some peril from it. The burden of proof is on the plaintiff to make out her case by a simple preponderance of evidence, and, if the weight of evidence is in her favor, as applied to the law of the case, you will so decide; if otherwise, you will find for defendant. If you find for the plaintiff in this case, gentlemen of the jury, you will determine the measure of damages, taking into consideration the nature, character, and extent of plaintiff's injury, her mental suffering, if any, in connection with and as incident to her physical suffering. As to the loss of time and medical bills, she is not entitled to any recovery in this case. Her services belong to her husband, and he would be entitled to recover for the loss of services and medical bills and attendance. You will allow her what is, in your judgment, a reasonable and round compensation for her injuries and physical and mental suffering in this case, having in view the character of the injury, as to whether it is temporary or whether it is permanent.

NOTE. The jury returned a verdict for defendant. Plaintiff filed motion for a new trial on account of alleged error in the charge. This motion was by the court overruled, without an opinion.